## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HARBHJAN S.,[1] | ) | |
| | ) | No. 19 CV 6119 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | April 19, 2021 |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

In June 2006 Harbhjan S. was found to be disabled beginning in August 2003. But in March 2016 the Social Security Administration determined that Harbhjan is no longer disabled and terminated her benefits. Harbhjan seeks to continue her disability benefits because she claims that she continues to be unable to work because of impairments related to her diabetes, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right shoulder, right hand and wrist pain, and fibromyalgia. Harbhjan filed this lawsuit seeking reversal of the decision discontinuing her benefits. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross motions for summary judgment. For the following reasons, Harbhjan's motion is denied, and the government's is granted:

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

## Procedural History

Harbhjan was found to be disabled in June 2006 with an onset date of August 4, 2003. (Administrative Record ("A.R.") 15.) On March 9, 2016, however, Harbhjan was found to be no longer disabled. (Id.) Following a hearing, a state disability hearing officer upheld the termination of Harbhjan's benefits. (Id.) Harbhjan requested and received a hearing before an administrative law judge ("ALJ"), (id. at 249-62, 266-84), and in January 2018 Harbhjan appeared at the hearing with her attorney, a vocational expert ("VE"), and a medical expert ("ME"), (id. at 34-105). Following the hearing, the ALJ found in May 2018 that Harbhjan was not disabled. (Id. at 15-26.) When the Appeals Council declined review, (id. at 1-3), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Harbhjan then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Facts

Harbhjan, a high school graduate, has worked as a lunch monitor for an elementary school for about two hours each school day since 2000. (A.R. 64-65, 128-30, 433, 437.) Harbhjan also worked at a department store as a stock merchandiser for a period of time. (Id. at 65, 132-34.) In 2003 she began experiencing tremors in her right hand and fibromyalgia. (Id. at 66, 135, 235, 459.) She currently suffers from dyslexia, insulin-dependent diabetes, fibromyalgia, nerve pain, herniated disc,

migraine headaches, and untreated anxiety and depression. (Id. at 21, 132, 144, 235, 237, 393.)

## A.    Medical Evidence

Harbhjan's medical records show that since March 2016, she has suffered from type 2 diabetes with insulin therapy, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right shoulder, right hand and wrist pain, and fibromyalgia. (A.R. 17, 752-54, 763, 767, 782, 840, 946-49, 972-73, 981-82, 1320-22, 1697-99.) She underwent gastric bypass surgery in October 2013. (Id. at 508, 511, 1405.) Thereafter, an endocrinologist, Dr. Tina Bansal, and her primary care physician, Dr. Laura Baber, monitored her blood sugars. (Id.) Harbhjan's 2015 records show high hemoglobin results, consistent with uncontrolled but stable diabetes, (id. at 524-25, 530-66, 690, 1031-32), but they do not include any signs or complaints of pain or discomfort, (id. at 690). Harbhjan has experienced neuropathy secondary to her diabetes. (Id. at 573, 681, 770, 783.) But in June 2015, Dr. Baber observed "normal gait and station" and "normal movement of all extremities." (Id. at 593; see also id. at 509, 581, 586.)

In April 2015 Harbhjan reported lower left abdominal pain and discomfort and was advised to follow up with a gastroenterologist. (Id. at 508.) Her provider, Dr. James Kane, Jr., noted that she did not do so and did not obtain lab testing as ordered or take vitamins as directed. (Id.) In December 2015 Harbhjan reported bladder and low back pain, along with decreased activity and fatigue. (Id. at 573-77.) Harbhjan visited Dr. Bansal in February 2016 and reported that she was not

able to exercise because she was experiencing back and right wrist pain. (Id. at 683; see also id. at 763.) In 2017 Harbhjan's diabetes remained under control despite elevated A1C levels. (Id. at 764, 1571.)

Harbhjan has a history of back pain and underwent a microdiscectomy in March 2006 to treat her left L5-S1 herniated nucleus pulposus that was "compressing the nerve root." (Id. at 493-94.) Imaging of the cervical and lumbar spine performed in September 2017 revealed mild degenerative changes at C3-C4, C4-C5, and C6-C7 and mild bilateral neuroforaminal stenosis at L5-S1 secondary to a mild diffuse disc bulge. (Id. at 981-84.) Dr. Smriti Wagle noted that Harbhjan had participated in physical therapy for two years but continued to experience back pain. (Id. at 957.) Harbhjan also reported neck pain in 2016 and was treated with injections, aqua therapy, acupuncture, nerve blocks, and chiropractic care. (Id. at 1038-1261, 1320-26, 1339-53.) On examination in September 2017, Harbhjan had tenderness in the cervical and lumbar spine, but a sitting straight leg raise test was negative bilaterally and she had normal light touch sensation in the upper and lower limbs. (Id. at 973.)

In 2015 Harbhjan reported joint swelling and limited motion in her right shoulder. (Id. at 599, 606, 613.) She also suffers from pain and numbness in her hands and right wrist, (id. at 686, 753, 763, 771, 1571), and has reported problems with fatigue, sleeping, and body pain and tenderness, (id. at 767, 844, 897, 946, 949, 973). Dr. Baber ordered imaging of the right shoulder, (id. at 607, 614), which showed no evidence of a rotator cuff tear (id. at 1357). Imaging performed on her

right wrist in June 2016 showed no evidence of an acute fracture. (Id. at 1355.) In July 2016 she began occupational therapy for her hand and wrist pain. (Id. at 752-54.) In October 2016 Dr. Wagle diagnosed Harbhjan with fibromyalgia. (Id. at 949; see also id. at 844.) Harbhjan also has been diagnosed with an anxiety disorder and untreated depression. (Id. at 592, 612, 627, 647, 661, 686, 699, 897, 1562.)

## B.   Harbhjan's Hearing Testimony

Harbhjan testified that after graduating from high school she worked as a stock merchandiser for a department store but stopped working because she was tired, had difficulty sleeping, and was vomiting. (A.R. 70.) She said that she experiences tremors in her right hand and pain "[e]verywhere" in her body, including her shoulders, back, legs, head, hands, and right wrist. (Id. at 66, 71, 80-81, 83, 95.) She also testified that she continues to suffer from fatigue and difficulty sleeping at night. (Id. at 82.) She has depression but stopped taking her medication because of the side effect of feeling edgy. (Id. at 71-72.)

Harbhjan said that for the past 12 to 13 years she has worked for about two hours on school days monitoring students during lunch and recess. (Id. at 64-65, 70.) That job does not require her to engage in any lifting. (Id. at 65.) She can walk for five minutes and stand for twenty to thirty minutes. (Id. at 71, 83.) She does not have a driver's license and does not cook, wash dishes, launder clothes, or grocery shop. (Id. at 67-68.) Her husband and adult children assist her with these tasks. (Id. at 77, 80.) She said that she suffers from dyslexia but can solve crossword puzzles. (Id. at 69-70, 73.)

C.    **ME's Hearing Testimony**

An impartial ME testified that based on his review of the record and testimony, none of Harbhjan's impairments, individually or in combination, meets or equals a listed impairment.  (A.R. 49-50.)  The ME determined that Harbhjan's severe impairments are insulin-dependent diabetes and degenerative disc disease of the cervical and lumbar spine.  (Id. at 44-46.)  The ME also identified the following non-severe impairments: mild obesity; a tremor; and a 50 percent stenosis in her right internal carotid artery.  (Id. at 43-44, 48.)  The ME noted that Harbhjan was diagnosed with fibromyalgia and has complained of abdominal and right shoulder and wrist pain.  (Id. at 46-47, 50-51, 55-56.)

The ME assessed that Harbhjan retains a residual functional capacity ("RFC") to perform light work with the following additional limitations: she can push and pull frequently but not continuously; she can use foot controls frequently but not continuously; she must avoid long ladders, ropes, and scaffolds but can occasionally handle five- or six-step ladders, ramps, and stairs; she can balance frequently; she can occasionally stoop, crouch, kneel, and crawl; she can occasionally reach overhead; she can perform gross manipulation frequently but not continuously; and she must avoid unprotected heights, moderate exposure to dangerous machinery, and moderate exposure to extreme cold or vibration.  (Id. at 51-54.)

**D.     VE's Hearing Testimony**

A VE also testified and described Harbhjan's prior work as pricing leader and lunch supervisor, both of which are designated as light work. (A.R. 94-95.) The ALJ asked the VE whether a hypothetical individual could perform Harbhjan's past work if she had an RFC for light work with limitations including lifting up to 20 pounds occasionally and 10 pounds frequently, standing or walking six hours in an eight-hour day, frequently pushing or pulling, frequently operating controls bilaterally, never climbing ladders, ropes, or scaffolds, occasionally climbing ramps or stairs, frequently balancing, occasionally stooping, crouching, kneeling, and crawling, frequently reaching overhead bilaterally, frequently handling objects, frequently fingering, avoiding moderate exposure to extreme cold, vibrations, and dangerous moving machinery, and avoiding all exposure to unprotected heights. (Id. at 96-97.) The VE testified that such a person could perform Harbhjan's past work, as well as other jobs in the national economy, such as hand packer, assembler, and sorter. (Id. at 97.)

In response to questioning by Harbhjan's attorney, the VE testified that a limitation either to occasional handling or occasional fingering would preclude past work and the jobs previously identified by the VE, both at the light and sedentary levels. (Id. at 100.) Additionally, the VE testified that a limitation to frequent handling or frequent fingering and occasional reaching in all directions would also eliminate past work and prior jobs cited. (Id. at 101.)

### E.    The ALJ's Decision

The ALJ used the sequential eight-step evaluation process to determine whether Harbhjan continued to be disabled after March 9, 2016.  *See* 20 C.F.R. § 404.1594.  The ALJ determined that Harbhjan satisfied step one because she had not engaged in substantial gainful activity.  (A.R. 17.)  At step two the ALJ determined that since March 2016 Harbhjan has suffered from severe impairments of type 2 diabetes, degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease of the right shoulder, but that none of these impairments or combination of impairments meets or medically equals a listed impairment.  (Id. at 18.)  At step three the ALJ determined that medical improvement had occurred as of March 9, 2016.  (Id. at 19.)  Thus, the ALJ found that Harbhjan's disability ended on that date.  (Id.)

At step four the ALJ determined that Harbhjan's improvement was related to her ability to work.  (Id.)  Accordingly, the ALJ proceeded to step six and concluded that Harbhjan's impairments were severe at all relevant times.  (Id.)  At step seven the ALJ found that from March 2016 through the date of her decision Harbhjan retained the RFC for light work with the following additional limitations: she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, stoop, and crouch; she can frequently kneel, crawl, push and pull, operate foot controls, and balance; she must avoid moderate exposure to extreme cold, wetness, and humidity and to vibration and dangerous moving machinery; and she must avoid all exposure to unprotected heights.  (Id. at 20.)  The ALJ concluded that

8

Harbhjan was not able to perform past relevant work but at step eight he found that Harbhjan was able to perform a significant number of jobs in the national economy. (Id. at 24-25.)

## Analysis

Harbhjan argues that the ALJ erred in evaluating her subjective statements about her symptoms and assessing her RFC. (R. 12, Pl.'s Br. at 1-2.) The court reviews the ALJ's decision only to ensure that it is based on the correct legal criteria and supported by substantial evidence. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citation omitted). The ALJ is required to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). But this court is "not free to replace the ALJ's estimate of the medical evidence" with its own, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and must uphold the decision even where "reasonable minds can differ over whether [the claimant] is disabled," *see Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## A. Symptom Assessment

Harbhjan argues that the ALJ erred in evaluating her subjective symptom allegations. An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe first-hand the believability of the claimant's symptom

descriptions. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may only reverse a symptom assessment where it is "patently wrong." *Id.* at 816. When evaluating the claimant's symptom statements the ALJ considers various factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Here the ALJ considered the applicable factors in assessing the severity of Harbhjan's symptoms, including her subjective allegations, the objective medical evidence, her medication and side effects, the opinion evidence, her daily activities, and the treatment she received. (A.R. 21-24.) Specifically, the ALJ considered Harbhjan's allegations that she can walk for only five minutes and stand for twenty to thirty minutes, has difficulty sitting still and reaching out in front of her, experiences pain while sitting, walking, and bending, and requires help with chores and her insulin injections. (Id. at 21-22.) The ALJ noted, however, that Harbhjan did not report to her primary care physician, Dr. Baber, any difficulty walking, climbing, dressing, bathing, or running errands. (Id. at 22 (citing id. at 829).) He also noted that Harbhjan was able to maintain part-time employment in addition to

performing other daily activities, including folding light towels and solving crossword puzzles, despite a reported inability to use her hands. (Id.)

As to the objective medical evidence, the ALJ noted that Harbhjan suffers from diabetes with neuropathy but exhibited "normal gait and station and normal movement of all extremities." (Id.) The ALJ found that Harbhjan suffers from degenerative joint disease in her right shoulder and disc disease in her cervical and lumbar spine, (id. at 18), but an April 2015 MRI of the right shoulder was normal, (id. at 22-23; see also id. at 47). While September 2017 imaging showed cervical and lumbar spondylosis with facet arthropathy, the ALJ noted that there was "no evidence" that Harbhjan's musculoskeletal disorders precluded her from performing all work. (Id. at 23.)

The ALJ also noted that the "bulk" of the medical evidence documented Harbhjan's pain treatment, which included narcotics. (Id. at 23-24.) The ALJ found no indication by any provider that in seeking such treatment Harbhjan was "malingering or drug seeking." (Id. at 23.) Regardless, the ALJ determined that objective evidence was lacking to support the severity of pain Harbhjan reported. (Id. at 23-24.) In so finding, the ALJ relied on the ME's opinion that Harbhjan was capable of performing light work with limitations. (Id. at 24; see also id. at 43-63.) The ALJ also adopted the opinions of the state agency medical consultants who determined that Harbhjan had experienced medical improvement relating to her ability to work. (Id.; see also id. at 729-50.) Based on these factors, the ALJ concluded that Harbhjan's symptoms are not as limiting as she alleged them to be.

Harbhjan nonetheless argues that the ALJ's symptom evaluation should be reversed, asserting that the ALJ improperly relied on a lack of objective evidence supporting her subjective allegations. (R. 12, Pl.'s Br. at 1.) For support Harbhjan cites SSR 16-3p and Seventh Circuit cases, which according to her preclude an ALJ from rejecting "a claimant's subjective reports of pain due to a lack of objective evidence." (Id. at 5.) As the government points out, however, the authority cited by Harbhjan states only that "an ALJ may not rely 'solely,' 'just,' or 'merely'" on a lack of objective evidence. (R. 22, Govt.'s Mem. at 2 (quoting SSR 16-3p; *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)).) Here the ALJ considered not only a lack of objective evidence supporting Harbhjan's pain allegations but also other factors set forth in SSR 16-3p, including uncontradicted medical opinions, Harbhjan's medication and side effects, and her daily activities.

Harbhjan next argues that the ALJ improperly relied on her daily activities in discounting her symptom allegations. The applicable regulations authorize ALJs to consider a claimant's daily activities as a factor in evaluating subjective symptom statements. *See* 20 C.F.R. § 404.1529(c)(3); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). Furthermore, the Seventh Circuit has instructed that a review of daily activities "is an important part" of "assessing whether a claimant is exaggerating the effects of her impairments." *Green v. Saul*, 781 Fed. Appx. 522, 526-27 (7th Cir. 2019). Although an ALJ may not equate daily activities with the ability to perform full-time work, *see Beardsley*, 758 F.3d at 838-39, that is not what the ALJ did here.

12

The ALJ found that Harbhjan's ability to work nearly two hours on school days undermined her testimony regarding the severity of her symptoms and her ability to walk for only five minutes, stand for twenty to thirty minutes, and have only limited use of her hands. (A.R. 21-22.) *See also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ did not equate [plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms.").

The ALJ also considered Harbhjan's report to Dr. Baber that she did not have difficulty walking, climbing stairs, dressing, bathing, or running errands by herself and concluded that the intensity to which she testified at the hearing was not consistent with her daily activities of record. (Id. at 22); *see also Green*, 781 Fed. Appx. at 527. Harbhjan points to another treatment record from 2016 documenting limitations with grooming, cleaning, and preparing food because of her hand and wrist pain,(R. 12, Pl.'s Br. at 6), but it is not this court's role to reweigh the evidence or to substitute its judgment for the ALJ's, *see Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Harbhjan also refers to her 2015 function report for support, but there she reported that she can cook, clean, and launder, fold, and iron clothes. (A.R. 394-95.) The court thus finds no error in the ALJ's consideration of Harbhjan's daily activities.

Harbhjan further asserts that the ALJ failed to assess the combined effect of pain caused by her impairments, as required under SSR 96-8p, 1996 WL 374184, at

*1 (July 2, 1996). (R. 12, Pl.'s Br. at 6-7.) Although the ALJ explained, "[a]s required by SSR 96-8p, the [RFC] has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments" (A.R. 20), Harbhjan asserts that he did not engage in a "meaningful analysis of the combined effect" her impairments had on her ability to work, (R. 27, Pl.'s Reply at 3). The court disagrees. While the ALJ was not permitted to "select and discuss only that evidence that favors his ultimate conclusion," he also was not required to "provide a complete written evaluation of every piece of testimony and evidence." *Stephens v. Berryhill*, 888 F.3d 323, 328-29 (7th Cir. 2018) (internal quotations and citations omitted). Here the ALJ discussed Harbhjan's medically determinable impairments, confronted her allegations and evidence of record, and reasonably considered the severity of symptoms allegedly caused "by the combined effects of" those impairments. (A.R. 20-24.)

Harbhjan also argues that the ALJ failed to evaluate her pain caused by fibromyalgia, myofascial pain syndrome, and abdominal issues.[2] (R. 12, Pl.'s Br. at 7-8.) The government correctly notes that the ALJ referred to Harbhjan's fibromyalgia when discussing her symptom allegations. (R. 22, Govt.'s Mem. at 5 (citing A.R. 21).) The ALJ also addressed Harbhjan's pain allegations and, as the

---

[2] Insofar as Harbhjan suggests that the ALJ erred at step two by not finding her fibromyalgia or myofascial pain syndrome to be severe impairments, she does not develop this argument and therefore waives it. *See Vang v. Saul*, 805 Fed. Appx. 398, 403 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived." (internal quotations and citation omitted)).

government points out, fibromyalgia is a pain disorder. (Id.; see also A.R. 21-24.) As for myofascial pain syndrome, Harbhjan's pain physician described her as having "diffuse myofascial pain" and then in October 2017 diagnosed her with fibromyalgia. (Id. at 50-51.) The government cites Mayo Clinic records showing that myofascial pain syndrome is considered a "subtype of or precursor to" fibromyalgia. (R. 22, Govt.'s Mem. at 5.) Regardless of whether he specifically referenced myofascial pain, because the ALJ considered Harbhjan's pain at length and provided specific findings supported by substantial evidence to explain why he discounted her pain description, (A.R. 21-23), the court finds no reversible error in the ALJ's evaluation of Harbhjan's pain allegations. *See Murphy*, 759 F.3d at 815.

Harbhjan next argues that the ALJ mischaracterized her testimony about needing to lie down during the day. During the hearing, Harbhjan testified that she goes "in and out of sleep" because of her fatigue and has "no energy no matter what" she does. (A.R. 72, 82.) She said she needs to "lie down for an hour" each day. (Id. at 82.) In his decision the ALJ found Harbhjan's reports of needing to rest during the day inconsistent with her ability to maintain daily, part-time employment, along with other daily activities, for a prolonged period. (Id. at 21.) In so finding, the ALJ characterized Harbhjan's testimony as needing to "lie down during the day hourly," rather than for an "hour" as she in fact testified. (Compare id. with id. at 82.) Although this mischaracterization gives the court some pause, not all of the ALJ's reasons for discounting a claimant's subjective statements need to be supported, as long as enough of them are. *See Halsell v. Astrue*, 357 Fed. Appx. 717,

722-23 (7th Cir. 2009). Given the overall strength of the ALJ's discussion of Harbhjan's symptoms, this single error does not warrant reversal.

Finally, Harbhjan contends that the ALJ failed to assess the impact of her fatigue and medication side effects on her ability to work. (R. 12, Pl.'s Br. at 1.) But in so arguing, Harbhjan cites the following language from the ALJ's decision: "The claimant was prescribed medications including narcotics that could have sedative effects. This factor reinforces the [RFC] provision that she must avoid even moderate exposure to dangerous machinery and all exposure to unprotected heights." (Id. at 10 (citing A.R. 24).) Given this language, there is no doubt that the ALJ considered Harbhjan's fatigue and medication side effects in crafting his RFC. While Harbhjan appears to argue that her fatigue and sedation constitute a "disabling" side effect, she cites no evidence or authority to support her argument and, as the government points out, she does not point to any opinion requiring more severe limitations. (R. 22, Govt.'s Mem. at 7.) Accordingly, the court concludes that the ALJ's symptom analysis is supported by substantial evidence and not patently wrong. *See Burmester*, 920 F.3d at 510-11 (finding no error where ALJ provided "many specific reasons" and citations to record).

## B.    RFC Assessment

Harbhjan argues that the ALJ erred in assessing the RFC by failing to specify how many hours she could sit, stand, or walk and by failing to include manipulative and reaching limitations. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the

claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). As for limitations on sitting, standing, and walking, Harbhjan asserts that the ALJ violated SSR 96-8p by failing to "describe the maximum amount of each work-related activity" she can perform. (R. 27, Pl.'s Reply at 9.) She contends that the ALJ's RFC finding that she can "perform light work as defined in 20 C.F.R. 404.1567(b)" with additional limitations was not sufficiently specific. (R. 12, Pl.'s Br. at 11.) The regulation cited by the ALJ states that a job in the "light work" category "requires a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm and leg controls" but does not specify exactly how many hours Harbhjan could sit, stand, or walk. (Id.) Harbhjan asserts that such specificity was required given her subjective symptom allegations and evidence of back pain and fatigue. (Id.)

Even if the ALJ committed an error by not expressly stating in his RFC that Harbhjan could stand, walk, and sit for six hours in an eight-hour workday, the government contends—and the court agrees—that SSR 83-10, 1983 WL 31251 (Jan. 1, 1983), fills the "regulatory gap" in 20 C.F.R. § 404.1567(b). (R. 22, Govt.'s Mem. at 8.) SSR 83-10 defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The regulation further states that "the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time." *See* SSR 83-10. The ALJ's hypotheticals to the VE make clear that he was defining "light work" as being

able to stand, walk, and sit for six hours in an eight-hour workday, consistent with the definition supplied in SSR 83-10. (A.R. 96.)

Moreover, the government correctly points out that the ALJ rejected Harbhjan's allegations that she could walk for only five minutes and stand for twenty to thirty minutes. (R. 22, Govt.'s Mem. at 8 (citing A.R. 21).) In so finding, the ALJ afforded "significant weight" to the ME's opinion that Harbhjan retained an RFC for light work with exertional limitations for lifting and carrying.[3] (A.R. 24, 51-54.) The regulation cited by the ALJ, 20 C.F.R. § 404.1567(b), specifies the number of pounds that can be lifted (no more than 20 pounds) or carried (up to 10 pounds) consistent with light work. In rejecting Harbhjan's allegations of significant restrictions in walking and standing, the ALJ also adopted the opinion of the state agency medical consultant Dr. Richard Smith, who opined that Harbhjan could stand, walk, and sit for six hours in an eight-hour workday. (A.R. 24, 729-36.) Even though the ALJ could have been more explicit in his decision in this regard, the court declines to find a reversible error on this basis, and Harbhjan cites no controlling authority requiring remand. The ALJ provided substantial evidence to support his RFC assessment, and his reliance on Dr. Smith's findings, together with

---

[3] The ME based his light RFC on Harbhjan's diabetes and chronic abdominal and "diffuse" musculoskeletal pain which in his opinion required lifting and carrying restrictions at the light level. (A.R. 51.) In light of Harbhjan's "chronic pain complaints," "the diagnosis of fibromyalgia," diabetes, and other pain factors, the ME also assessed Harbhjan as having restrictions on: pushing and pulling; use of foot controls; use of long ladders, ropes, scaffolds, ramps, and stairs; balancing; stooping, crouching, kneeling, and crawling; overhead reaching; gross manipulation; and exposure to unprotected heights, dangerous machinery, extreme cold, and vibration. (Id. at 51-54.)

SSR 83-10 and the questions he posed to the VE, demonstrates that the ALJ properly incorporated standing, sitting, and walking restrictions into the RFC assessment.

Harbhjan also argues that the ALJ erred by not including fingering and handling limitations in her RFC. (R. 12, Pl.'s Br. at 12-15.) She contends that because the ALJ presented a hypothetical to the VE that included such limitations, the ALJ was required to incorporate such restrictions in her RFC. (Id. at 12.) But the ALJ rejected Harbhjan's subjective allegations as to her inability to use her hands. Specifically, the ALJ determined that her testimony that she could fold light towels and solve crossword puzzles "demonstrat[es] that she has control of her hands to perform fine manipulations." (A.R. 22; see also id. at 394-95 (stating in her 2015 function report that she can cook, clean, and launder, fold, and iron clothes).)

Finally, Harbhjan contends that the ALJ failed to account for her reaching restrictions in his RFC. (R. 12, Pl.'s Br. at 14-15.) Harbhjan testified that she had difficulty reaching and could hold her hands out for only two to three minutes because of pain in her neck, arm, and hands. (A.R. 92-93.) In his decision the ALJ found that, given Harbhjan's right shoulder complaints, she was limited to occasional overhead reaching, but he rejected additional reaching restrictions. (Id. at 23.) The ALJ supported his decision with substantial evidence. Despite Harbhjan's reports of "right shoulder pain with limited motion and stiffness of the joint," the ALJ determined that 2015 imaging showed no rotator cuff tear and the

19

labrum was "grossly intact." (Id. at 22-23.) In addition to objective medical evidence, the ALJ relied on the ME's testimony that based on "upper limb girdle, and pain, and tenderness," overhead reaching should be limited to "occasional only." (Id. at 24, 53.) The ALJ also relied on Harbhjan's own reports to Dr. Baber and her activities of daily living. (Id. at 20-24, 829.) The ALJ was required to incorporate into the RFC assessment only those limitations that were supported by the record. *See Yurt*, 758 F.3d at 857. Here he found that the record did not support Harbhjan's allegations that she was unable to reach in any direction.

Despite the ALJ's finding that Harbhjan was limited to occasional reaching overhead, (A.R. 23), he did not include this limitation in Harbhjan's RFC, (id. at 20). The ALJ's error in this regard is harmless and does not require remand because when the ALJ posed his first hypothetical to the VE, he limited the individual to "frequently com[ing] up but not constantly reach[ing], except only occasionally reach[ing] overhead bilaterally." (Id. at 96-97.) In response to that hypothetical, the VE testified that such an individual could perform past work and other jobs in the national economy. (Id.) By contrast, when Harbhjan's attorney questioned the VE, she testified that a limitation to occasional reaching *in all directions* would eliminate past work and other jobs cited. (Id. at 100-01.) But the ALJ never found record support for limiting Harbhjan's reaching in all directions. (Id. at 20-24.) Accordingly, the court finds no error in the ALJ's RFC assessment.

## Conclusion

For the foregoing reasons, Harbhjan's motion is denied, and the government's is granted.

ENTER:

**Young B. Kim**
**United States Magistrate Judge**